[S. F. No. 19579. In Bank. June 6, 1958.]

Estate of JOSEPH VINCENT DE LAVEAGA, Deceased. JUANITA VALERIE DE LAVEAGA SOMAVIA, as Remainderman-Beneficiary, etc., Appellant, v. MARGARET BROYER BETTS, as Executrix, etc., Respondent.

Burnham Enersen, Robert Edmondson, Katherine M. Griffin and McCutchen, Thomas, Matthew, Griffiths & Greene for Appellant.

Richard I. McCarthy, C. J. Goodell and Ralph Bancroft for Respondent.

SCHAUER, J.—The remainderman of a testamentary trust appeals from a judgment which, insofar as is here material, directs the trustee to pay $26,240 from the trust assets to the executrix of the estate of the life tenant, together with accumulated and unpaid interest thereon in the sum of $31,-066.43. A cross-appeal was taken by the respondent executrix, but has been abandoned.

The sum of $26,240 (the principal here) represents income earned during the probate administration of the trustor's estate and distributed to the trustee (without segregation from the corpus) on October 20, 1932; it was not paid over to the life tenant by the trustee but was administered as part of the trust corpus, the income from all of which was regularly accounted for, but not segregated as to source, and paid to the life tenant. The sum of $31,066.43 represents interest which the trial court determined[1] had accumulated, under the provisions of section 162 of the Probate Code, for detention of the principal sum ($26,240) during the nearly 23 years of trust administration.

Appellant-remainderman concedes that the life tenant of a testamentary trust is entitled to the income earned by trust corpus during the period of probate administration but contends that respondent-executrix is now precluded from asserting her claim to such income by the doctrine of res judicata and the statute of limitations. Appellant-remainderman also questions the trial court's allowance of interest, pointing to the fact that the life tenant received all the income from the trust, including income from the very fund upon which the court below has now allowed her estate some 23 years' interest.

For reasons hereinafter stated we have concluded that respondent's claim is not precluded and that the judgment should be affirmed to the extent that it orders payment of the principal sum but that insofar as the judgment awards $31,066.43 interest as compensatory damages for the wrong-

---

[1]The interest was computed by the court at the rate of 7 percent per annum from October 20, 1932 (the date of distribution to the trustee), to September 13, 1941, and at 4 per cent per annum from September 14, 1941, to the date of the trial court's decree (September 22, 1955), in accordance with the provisions of section 162 of the Probate Code as those provisions read during the periods specified.

ful withholding of principal, it should be reversed and the cause remanded with instructions to recompute the damages due, allowing the trustee credit for all monies earned by the principal sum and accounted for and paid over to the life tenant.

Joseph Vincent de Laveaga died testate on October 2, 1931. His will devised and bequeathed one third of the residue of his estate in trust, with directions that the income be paid to his second wife, Gertrude C. de Laveaga, for life or until her remarriage, remainder to his daughter by his first marriage, Juanita Valerie de Laveaga Somavia, the appellant herein.

On October 7, 1932, the executor filed his first and final account and petition for distribution of the decedent's estate. The account included an itemized statement of receipts and disbursements and a summary showing that the total receipts exceeded total disbursements by $145,024.12. On October 20, 1932, the account was settled, approved and allowed as rendered, and as provided in the will an undivided one third of the residue of the estate was ordered distributed to the trustee to be held under the terms of the trust. The cash distributed to the trustee included a one third share of the income earned during the period of probate administration but no segregation or designation was made as to the portion representing the original estate assets and the portion representing the income earned by such assets. The parties to this proceeding have stipulated that $26,240 of the sum distributed to the trustee represented predistribution (probate) income, but this fact did not appear in the petition for distribution or in the decree. The life tenant received the required notice of the filing of the executor's account and petition for distribution. She made no objection, nor did she appeal from the decree approving the account and distributing the estate.

On December 13, 1933, the trustee filed its first account and report and petition for settlement. The account included receipts and disbursements from November 10, 1932, to October 20, 1933. All of the assets received under the terms of the decree of distribution were designated as "principal" but there was no segregation of the predistribution (probate) income or allocation of it as such. The account showed that the trustee had invested almost the entire amount of cash received under the decree of distribution in stocks and bonds which were listed as "assets" of the trust. The

account also showed that no portion of the predistribution income had been paid to the life tenant.

Notice of the filing of the account was given to the life tenant but she advanced no objection nor did she appeal from the order settling the account. The same is true concerning 10 other accounts filed by the trustee and approved by the court prior to the death of the life tenant on January 23, 1953. None of the accounts segregated predistribution income and each continued to treat as corpus all assets received under the probate decree of distribution.

On July 15, 1953, the trustee filed its final account and petition for decree declaring the trust terminated. The executrix of the estate of the life tenant filed objections to the account and for the first time claimed that the amount of probate income distributed to the trustee should be paid to the estate of the life tenant. The trustee and remainderman filed answers to the objections and a hearing was held. The lower court concluded that the estate of the life tenant is entitled to payment of (1) the predistribution income (stipulated to be $26,240), plus (2) interest thereon computed according to the provisions of section 162 of the Probate Code. Judgment was thereupon entered awarding the life tenant's estate the principal sum of $26,240 plus interest thereon in the sum of $31,066.43 computed at the statutory rate and without allowing credit for the net earnings on the principal which, as above indicated, had been regularly accounted for and paid over to the life tenant during the term of the trust. The remainderman appeals.

It is settled law that in the case of a testamentary trust, unless the will provides otherwise, the life tenant's right to income dates from the death of the testator rather than the date of distribution. (*Estate of Platt* (1942), 21 Cal.2d 343, 346-348 [1] [131 P.2d 825].) Appellant does not quarrel with that rule but contends that respondent is now precluded from claiming its benefit. Appellant urges that the question of the life tenant's right to predistribution income is res judicata since, it is argued, that question was presented to the court at the time of distribution and the decree of distribution effectively and finally determined that all of the property distributed to the trust was distributed as corpus. The argument, which conceivably could have prevailed in the trial court, cannot on the state of the record support a reversal here.

■ Income earned by trust property during the period of probate administration inures to the benefit of the trust and is payable by the executor *to the trustee* upon distribution. (*Estate of Marré* (1941), 18 Cal.2d 184, 190 [5] [114 P.2d 586]; *Estate of Dare* (1925), 196 Cal. 29, 35-36 [1] [235 P. 725]; *Estate of Hardy* (1944), 62 Cal.App.2d 958, 961-962 [4] [145 P.2d 910].) This is so regardless of who may be entitled to receive that income from the trustee. (*Estate of Peterson* (1949), 92 Cal.App.2d 677, 682-683 [207 P.2d 607].)

■ It follows that the trust property need not of necessity be allocated between income and corpus in the proceedings which result in the decree of distribution. ■ If issues are raised concerning the ultimate disposition of predistribution income, the court's determination of those issues is res judicata. (*Estate of Tynan* (1954), 129 Cal.App.2d 364, 366-368 [2] [276 P.2d 809].) ■ But if no allocation is made in such proceedings and the trust property is merely distributed to the trustee as an aggregate, the trustee comes under a duty to make the appropriate allocation and later litigation is not precluded. (*Estate of Hill* (1957), 149 Cal. App.2d 779, 784 [4] [309 P.2d 39].)

■ In the present case the decree of distribution by its terms merely distributed the trust property to the trustee as an aggregate and did not purport to make an allocation between corpus and income or declare the property to be entirely corpus. Appellant, however, argues that the facts of this case are indistinguishable, in legal contemplation, from those involved in *Estate of Tynan* (1954), *supra,* 129 Cal.App.2d 364, wherein a life tenant unsuccessfully attempted, on the settlement of the testamentary trustee's first account, to assert his right to predistribution income after the decree of distribution had become final. But in the Tynan case it was found that the life tenant ''acquiesced in the consumption during the executorship of all estate income received during the executorship.'' That finding shows that the probate court had before it an issue concerning the ultimate disposition of the predistribution income, determined the amount of such income and approved its consumption by the executor, with the result that none was left for distribution to the trustee. As indicated at page 368 of the opinion (129 Cal.App.2d), after the decree of distribution became final it was no longer material whether the life tenant actually acquiesced in the executor's consumption of the predistribution income. The issue concerning the disposition of such

income was res judicata. In the present case no issue concerning the ultimate disposition of predistribution income was raised prior to or determined by the decree of distribution; hence, respondent-executrix is not precluded by such decree.

■ Appellant-remainderman contends that the doctrine of res judicata compels the conclusion that the life tenant's claim is precluded by the orders settling the trustee's previous accounts. But the settlement of an account is not conclusive except as to such items as are included in it and are actually passed upon by the probate court. (*Estate of Clary* (1928), 203 Cal. 335, 340 [3] [264 P. 242]; *Estate of Ross* (1918), 179 Cal. 358, 362 [182 P. 303]; *Estate of Adams* (1901), 131 Cal. 415, 417 [63 P. 838]; *Estate of Hovland* (1940), 38 Cal.App.2d 439, 446 [3] [101 P.2d 500].) ■ The subject accounts did not purport to segregate or allocate predistribution income as such; they did not indicate that probate income was involved. They raised no issue concerning the segregation or allocation of any such income and the orders settling the accounts do not constitute adjudications that the life tenant had no right to predistribution income.

■ Appellant-remainderman's contention that the life tenant's claim is barred by the statute of limitations is on this record likewise without merit. As indicated above, when the decree of distribution failed to effect an allocation the trustee came under a duty to make the appropriate allocation in its accounts. The possession of the voluntary trustee of an unrepudiated express trust is not adverse to the beneficiaries. The obligation of such a trustee to account is a continuing duty and the beneficiary's right to demand an accounting runs with that duty and may be asserted so long as that duty remains unperformed; the trustee's mere failure to account, without more, may not be deemed an entire repudiation of the trust so as to start the statute running. (*Estate of Clary* (1928), *supra*, 203 Cal. 335, 341-343 [4]; *Elizalde* v. *Murphy* (1912), 163 Cal. 681, 684 [126 P. 978]; *Estate of Sanderson* (1887), 74 Cal. 199, 215-216 [15 P. 753]; 21 Cal.Jur.2d, Executors and Administrators, §§ 687 and 693, pp. 40 and 48.) It follows that the claim of respondent-executrix is not barred by the statute of limitations and the trial court did not err in determining that the estate of the life tenant is entitled to payment of the $26,240 of predistribution income.

As hereinabove mentioned the trial court also determined that the estate of the life tenant is entitled to

payment of $31,066.43 interest on the withheld principal (probate income) computed in accordance with the applicable provisions of section 162 of the Probate Code. It is undisputed that such principal sum ($26,240) was included by the trustee in the corpus of the trust estate and administered in good faith for the benefit of the life tenant throughout the term of the trust, the income from all of such trust corpus being accounted for and paid to the life tenant during her life. Despite this fact, no credit was allowed to the trustee for the income attributable to or earned by the $26,240, and paid to the life tenant, in computing the unpaid interest which the trial court has ordered that the trustee pay. It appears to us to be an elementary principle of accounting and of justice and of compensatory damages that such credit should be allowed. As hereinafter developed in more detail, interest (other than contractual) is simply a form of compensation or damages allowed by law for the wrongful detention of money.

Although this court has indicated that interest due a legatee pursuant to section 162 of the probate Code is due "as a part of or an accretion to the legacy itself" (*Estate of Hubbell* (1932), 216 Cal. 574, 578 [3] [15 P.2d 503]), this court has also stated that there is no impropriety "in designating as 'damages' the amount of money recovered in any judgment,—for 'every person who suffers detriment from the unlawful act or omission of another may recover from the person in fault a compensation therefor in money, which is called damages.' (Civ. Code, § 3281.)" (*Keyes* v. *Moy Jin Mun* (1902), 136 Cal. 129, 131 [68 P. 476].)

"The primary object of an award of damages in a civil action, and the fundamental principle or theory on which it is based, is just compensation or indemnity for the loss or injury sustained by complainant, and no more." (25 C.J.S., Damages, § 3, p. 461; other statements of the principle may be found in *Avery* v. *Fredericksen & Westbrook* (1944), 67 Cal.App.2d 334, 336-337 [154 P.2d 41].) It follows that "If the wrongful act of the defendant at once confers a benefit and inflicts an injury, the loss actually caused will be the net result of the act to the plaintiff; and this net result will be the measure of damages." (Sedgwick on Damages (9th ed.), vol. 1, § 63, p. 98; McCormick on Damages, § 40, p. 146, and cases therein cited.) As stated in *Mayo* v. *Springfield* (1884), 138 Mass. 70, 71, "An allowance for such benefits is not in the nature of recoupment or

set-off, but a method of determining the actual damages sustained." Section 1915 of the Civil Code defines interest as "the compensation allowed by law . . . for the . . . detention of money." There is nothing in the law which suggests that in a case such as this, where there is no suggestion of oppression, malice or fraud (see Civ. Code, § 3294), the court may award as such "compensation . . . for the . . . detention of money" both interest on, and all the earnings of, the detained money. The benefit to the recipient of money is the same, whether such money be denominated "earnings" or "interest."

 In the present case the trustee wrongfully but in good faith withheld predistribution income from the life tenant and treated that income as corpus, faithfully administering it as such. The Legislature, by means of section 162 of the Probate Code, has in effect provided that the estate of the life tenant should be compensated for this detention by the payment of interest at a certain rate. But by wrongfully withholding the predistribution income ($26,240) from the life tenant and treating it as corpus for the term of the trust, the trustee also conferred a benefit upon the life tenant, viz., the profitable administration of, and the payment to the life tenant of the income earned by, the wrongfully detained $26,-240. Under the authorities cited above the estate of the life tenant will be fully compensated for the detention of the money by payment of the interest due under section 162 of the Probate Code, less the amounts paid the life tenant as a result of that detention, viz., the income earned by the $26,-240, or by retention of such earnings if they should exceed the interest.

 The allowance of the credit does not depend on any claim of set-off; it is, rather, implicit in computing the amount of compensation due for the detention of the principal sum. The life tenant (or her estate) is entitled to retain whatever payments she received in the form of "earnings" from the principal sum whether or not such payments prove in excess of the interest due under section 162 of the Probate Code, but she may not have double recovery (two compensations) for one detention of one sum.

The judgment appealed from is affirmed in all respects except insofar as it awards $31,066.43 interest on the principal sum of $26,240 as damages for the wrongful detention of such principal; as to the award of damages the judgment is reversed and the cause is remanded to the trial court with direc-

tions to take such further proceedings as may be necessary or expedient to enable it to recompute the award in a manner not inconsistent with the views hereinabove expressed and, having had such proceedings, to thereupon make the computation and enter judgment in the appropriate amount. The cross-appeal is dismissed. Each party shall bear his own costs on appeal.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Spence, J., concurred.

McCOMB, J.—I concur in the majority opinion insofar as it affirms the judgment of the trial court.

I dissent from the portion of the opinion reversing the trial court's awarding of interest to the respondent.

In the present case the parties filed a written stipulation, which was approved by the court and read as follows: "That the sum referred to in the court's opinion as 'approximately $24,000.00' is hereby fixed at the sum of $26,240.00."

As pointed out in the majority opinion, the interest was computed by the court at the rate of 7 per cent per annum from October 20, 1932 (the date of distribution to the trustee), to September 13, 1941, and at 4 per cent per annum from September 14, 1941, to the date of the trial court's decree (September 22, 1955), in accordance with the provisions of section 162 of the Probate Code as those provisions read during the periods specified.

I would affirm the judgment in its entirety.

Appellant's petition for a rehearing was denied July 2, 1958.